SCHARRENBROICH, SHERIFF, RESPONDENT, *v.* LEWIS AND CLARK COUNTY, APPELLANT.

(No. 2,227.)

. (Submitted November 8, 1905.  Decided November 24, 1905.)

*Constitutional     Law—Statutes—Sheriffs—Compensation—Mileage.*

1. Appellant was elected sheriff in November, 1904. The law then in force (Pol. Code, sec. 4604) allowed the sheriff ten cents per mile actually and necessarily traveled and ten cents per mile for each person transported to the state prison, reform school and insane asylum. In 1905, after appellant had entered upon the discharge of his duties, the legislature by Act approved March 3, 1905 (Session Laws, 1905, c. 86, p. 180), amended section 4604 so as to allow sheriffs only actual traveling expenses for such transportation. *Held,* that section 31, Article V, of the Constitution prohibiting the increasing or diminishing of a public officer's salary or emolument during his term of office, is not violated by Act of March 3, 1905, when applied to officers elected prior to its passage.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by Peter Scharrenbroich, sheriff, against Lewis and Clark county.  Plaintiff had judgment, and defendant appeals. Reversed.

*Mr. William T. Pigott,* and *Mr. R. R. Purcell,* for Respondent.

Is the excess, over and above expenses, of the amount prescribed and required by sections 4604 and 4606 of the Political Code to be paid to sheriffs as mileage, an emolument?  In other words: The compensation, or fee, allowed to plaintiff by sections 4604 and 4606, is $185.70.  His actual expenses were $90.65.  Is the difference of $95.05 an emolument within the meaning of the Constitution?

At the time of his election plaintiff was entitled to an annual salary, and also to receive for his own use compensation or fees for the services mentioned in sections 4604 and 4605. For the services and outlay of traveling, his compensation was measured by distance and number of persons transported (if any) ; for the services and outlay of boarding, his compensation was measured by time and the number of persons boarded. In short, he received salary for some services, fees for others. The salary and the fees rest upon the same basis, and the constitutional inhibition applies to the one just exactly in the same degree, and for precisely the same reason, as it does to the other.

What is the allowance for mileage?  It is not salary, for salary is a fixed periodical stipend depending upon the time during which the officer serves, and not upon the amount or quality of service performed.  He may discharge no duties; he may perform no service; an intruder may occupy the office and do all the work—yet the salary must be paid to the officer.  It follows, and is an incident to, the office.  It is not merely reimbursement for expenses, for the rate is level and uniform

whether the outlay be greater or less in any case, or in all cases, than the fee fixed.

Furthermore, the statutes—notably original sections 3166, 3142, 3190, 3130, 3131, 3176, and 3179, and present sections 4630, 4604, 4606, 4634, 4591, 4640, and 4643—designate mileage as a fee. Section 4606 calls it compensation.

The mileage prescribed is, therefore, neither salary nor mere reimbursement for the sheriff's pecuniary outlay. These must be eliminated. We have, then, by necessity, but one recourse, and to that we are driven; it is a profit arising from the office— a perquisite, a gain, expressly allowed by law. . Hence, it is an emolument, which, as the Constitution ordains, cannot be increased or diminished after the officer's election. Senate Bill No. 87 confessedly attempts to diminish such emoluments as to sheriffs now in office. The bill is, therefore, void as to plaintiff, though valid as to sheriffs hereafter elected. Each word of the Constitution must, if possible, be given meaning, force, and effect. "Salary" is one thing, "emolument" is another. Although emolument is broad enough to include salary within its meaning, salary embraces but one kind of emolument. A salary is an emolument, but an emolument may or may not be a salary. Each word must be given its generally accepted, natural, and appropriate meaning. (*Power* v. *Commissioners,* 7 Mont. 82, 14 Pac. 658.) We cite this case, for the reason that it defines mileage as "an allowance for traveling, as so much by the mile," and distinguishes mileage and expenses. Mileage is an emolument within the meaning of that word used in the organic law. (*Lloyd* v. *Silver Bow County,* 11 Mont. 408, 28 Pac. 453.) In *Proctor* v. *Cascade County,* 20 Mont. 315, 50 Pac. 1017, the court designated mileage as a fee and as compensation. *State ex rel. Donyes* v. *Board,* 23 Mont. 250, 58 Pac. 439, supports plaintiff's position.

It must be admitted that if the profit or gain accruing to the sheriff from a level and uniform rate of allowance for board of prisoners is an emolument, the profit or gain accruing to him from a level and uniform rate of allowance for traveling is also an emolument. To distinguish between them is impossible.

In *Hoyt* v. *United States,* 10 How. 109, 135, 13 L. Ed. 348, emoluments are held to embrace "every species of compensation or pecuniary profit derived from a discharge of the duties of the office." *Appel* v. *Crawford,* 105 Pa. St. 300, 51 Am. Rep. 205, is directly in point, and has been repeatedly approved. (*Vansant* v. *State,* 96 Md. 110, 53 Atl. 711; *Peeling* v. *County of York,* 113 Pa. St. 108, 5 Atl. 67; *Thompson* v. *Phillips,* 12 Ohio St. 617; *Ricketts* v. *Mayor,* 67 How. Pr. 320; *Commonwealth* v. *Addams,* 95 Ky. 588, 26 S. W. 581; *Commonwealth* v. *Carter,* 21 Ky. Law Rep. 1509, 55 S. W. 701; *Twombley* .v. *Pinkham,* 3 N. H. 370; *Puelston* v. *United States,* 88 Fed. 970 (mileage fees); *Jacobus* v. *United States,* 87 Fed. 99 (mileage fees); *Hightower* v. *Bamberg County,* 54 S. C. 536, 32 S. E. 576 (mileage called fee); *Williams* v. *Kershaw County,* 56 S. C. 400, 34 S. E. 694 (allowance for board as compensation for services); *Weeks* v. *Texarkana,* 50 Ark. 81, 6 S. W. 504; 3 Words and Phrases, 2367, 2712.) Bouvier's Law Dictionary defines mileage as an allowance for trouble and expenses in traveling on public business. This is the correct definition, and has been adopted in *Howes* v. *Abbott,* 78 Cal. 272, 20 Pac. 572, and 20 Am. & Eng. Ency. of Law, 613. (See, also, *Mudgett* v. *Liebes,* 14 Wash. 594, 45 Pac. 20.)

*Mr. Albert J Galen,* Attorney General, and *Mr. E. M. Hall,* Assistant Attorney General, for Appellant.

The term "mileage" has a settled and well-defined meaning. "What is usually signified by the term 'mileage' is an allowance for traveling, as so much by the mile." (*Powers* v. *County Commrs. of Chotcau Co.,* 7 Mont. 82, 14 Pac. 658; 20 Am. & Eng. Ency. of Law, p. 613; *Richardson* v. *State,* 66 Ohio St. 108, 63 N. E. 594.)

The word "compensation," as used in section 4604, does not mean salary or emolument. Webster's Dictionary defines "compensation" as follows: "2. To be equivalent in value or effect to; to counterbalance; to make amends for." Salary is a certain sum paid at fixed periods for services performed.

Emoluments are fees paid an officer for services performed, as provided in section 4592. Compensation, as the word is used in section 4606, means the sums allowed an officer who receives either salary or emoluments to reimburse him for necessary expenses incurred in performing such services. Therefore, the proviso in section 4606 means "that nothing in this section shall be held to apply to the [reimbursement] received by the sheriffs [for traveling expenses] while in the performance of official duties." If the legislature, when amending said sections 3140, 3141 and 3142 of the original Code, intended that the "mileage" in sections 4604 and 4606 was not only to pay actual traveling expenses, but the excess, if any, after paying such expenses, was to be an increase of the sheriff's pay by way of emoluments as distinguished from his fixed salary, then it would have also amended section 3130, now numbered 4591, which provides that "All fees, penalties, and emoluments of every kind must be collected by him for the sole use of the county." It is clear that the legislature did not consider said mileage, or any part thereof, an emolument, for if so it would certainly have also amended said section 4591.

It is the well-established principle of law that under constitutional provisions similar to ours, the salary, compensation, fees or emoluments of a constitutional officer cannot be increased or diminished after his election or appointment. Such provisions apply, however, to the salary *or* emoluments received by the officer as full compensation for the personal discharge of official duty by him, as distinguished from money allowed to compensate or reimburse him for actual and necessary traveling expenses incurred in performing such official duties.

It should be noticed that in said section 31 of the Constitution the language is "salary *or* emoluments" instead of "salary *and* emoluments." It is evident that the framers of the Constitution used the word "emolument" in the same sense as the word "salary." While the amount of such salary cannot be increased or diminished after his election or appointment, it is well established by numerous authorities that the method or

manner of allowing and paying the actual and necessary expenses of his office can be changed by the legislature at any time, and such allowance may be changed during his term of office from mileage to actual expenses. So long as he is allowed his actual and necessary expenses in performing official duties, whereby he gets his salary net, such legislation is not in conflict with the constitutional prohibition against increasing or diminishing salaries or emoluments. (*Kirkwood* v. *Soto,* 87 Cal. 394, 25 Pac. 488. See, also, *Commonwealth* v. *Carter,* 21 Ky. Law Rep. 1509, 55 S. W. 702; *Gobrecht* v. *Cincinnati,* 51 Ohio St. 68, 36 N. E. 732, 23 L. R. A. 609; *State* v. *Grimes,* 7 Wash. 445, 35 Pac. 361; *Thompson* v. *Phillips,* 12 Ohio St. 617; *Briscoe* v. *Clark Co.,* 95 Ill. 309; *Milwaukee County Supervisors* v. *Hockett,* 21 Wis. 620, and particularly see *Dane* v. *Smith,* 54 Ala. 47.)

To the contrary, however, see the case of *Apple* v. *Crawford County,* 105 Pa. St. 302, 51 Am. Rep. 205, construing a constitutional provision the same as ours. This case cites no authorities, and seems to have been decided upon the definition of emolument given in Webster's Dictionary. That case practically holds that inasmuch as "emolument" is defined to be a "profit" or "gain," and inasmuch as the sheriff succeeded in making "profit" or "gain" out of the amount allowed him for the purpose of paying the expenses of boarding prisoners, therefore such allowance was an emolument, as the term is used in the Constitution. It is the same method of reasoning around a circle that the respondents in the case at bar have resorted to in order to maintain their contention that "mileage" is an emolument. Furthermore, we have not been able to find any section of the Pennsylvania statutes, in force at the time the case of *Apple* v. *Crawford County, supra,* was decided, which is similar to said section 4594 of our statutes.

MR. JUSTICE MILBURN delivered the opinion of the court.

This case is on appeal from a judgment in favor of the plaintiff and respondent. The plaintiff was elected sheriff for the

county of Lewis and Clark in 1904 and is still the incumbent of that office. In the months of March, April and May he, in obedience to lawful orders, transported three persons to the insane asylum and one to the reform school, necessarily traveling twelve hundred and thirty-eight miles, for which distance the statute, in force at the time of his election, allowed him $185.70 for mileage of himself and the persons in his charge. His actual expenses were $90.65, leaving, as respondent claims, "$95.05 as clear gain or profit to him for the services performed in traveling and dieting and conveying the persons to the asylum and school." His claims were disallowed in part, he being allowed the sum of $90.65, the actual amount of his expenses. The court below upon an agreed statement found the amount claimed by the sheriff and rendered judgment against the appellant Lewis and Clark county for $185.70. Hence this appeal.

The question to be settled is: Which law applies—the law in force at the time of the sheriff's election, which allowed him ten cents per mile mileage, or Senate Bill No. 87 (Chapter 86, page 180, Act of March 3, 1905), passed after his taking office and allowing actual expenses only? The discussion has gone over a wide field, taking into consideration numerous sections of the original Codes, which were passed as a whole in 1895 and amended at the same session in many particulars. There has been a wide range in the discussion as to what laws have been repealed by implication, expressly and by substitution. It is interesting, but not important in this case, to trace the legislation affecting and relating to the income and expense account of the sheriff.

It is conceded that the present statute, which allows only actual expenses to the sheriff, is valid and binding upon all officers elected after the date of its passage. It is also understood that the Act in force at the time of the election of the sheriff was valid.

The point made by respondent is, that the Constitution (section 31, Article V) prohibits the increasing or diminishing of

the amount the sheriff shall receive for expenses during the term of office to which he is elected. The section is as follows: "Sec. 31. Except as otherwise provided in this Constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emolument after his election or appointment; *Provided,* that this shall not be construed to forbid the legislative assembly from fixing the salaries or emoluments of those officers first elected or appointed under this Constitution, where such salaries or emoluments are not fixed by this Constitution."

We think it impossible to reconcile all the different definitions and attempted definitions of the words "compensation" and "emolument," as used in the several sections of the statute and in the opinions of this court, unless we adopt what we believe has always been the intention of the legislature and the view of this court, that in respect of sheriffs the word "salary" means what it ordinarily means: a fixed compensation, made by law to be paid periodically for services, whether there be any services actually rendered or not. The word "emolument" is more comprehensive than "salary." But the Constitution says "salary or emolument." There are those who receive salaries, and there are other officers who receive certain emoluments which are not salaries. For instance, section 4592 of the Political Code says: "The county surveyor, coroner, public administrator, justice of the peace, and constables may collect and receive for their own use, respectively, for official services, the fees and emoluments prescribed in this chapter. All other county officers receive salaries." This last sentence, saying that "all other county officers receive salaries," is pregnant with meaning, being unnecessarily put into that section, unless it is there placed from an abundance of caution, to let the people know that certain county officers receive salaries, and that the words "fees and emoluments" are not to include in their scope and meaning the word "salary," and that salaried officers are not to have "fees and emoluments" other than salaries from the state or county. In other words, that section might

be well read thus: Whereas all other county officers receive salaries, therefore, the county surveyor et al., who do not receive salaries, may receive and collect fees, etc., for their own use.

The object of the legislature was to have certain services performed for the people, and not to make money for a sheriff or to set him up in business. The old idea of paying an officer was to feed him and clothe him and take care of his family, while he was giving his services to the people. There never was any idea that holding public office was a private business. The purpose of the people is to make its officers whole, not to enrich them. The salary is to pay the officer for his time and services. The mileage as originally fixed was a uniform rate fixed by the legislature, with a view to make the sheriff whole for what he might lay out on account of the people. It was not the intention of the legislature to give the sheriff ten cents a mile to take a prisoner from Miles City to the penitentiary, in order that he might be privileged to figure out how cheaply he could carry him—perhaps to the great discomfort of the unfortunate convict—and how big a margin of profit or gain he could make out of the performance of his own duty to take the prisoner to the penitentiary in comfort and safety. It never was intended that the ten cents per mile should be an inducement to the sheriff to take five persons separately, and thereby get much more for himself than he would get if he should take them at one and the same time with one deputy to assist him.

The same reasoning would apply to the feeding of prisoners in the county jail. If the statute allows fifty cents per day for feeding a prisoner, there is no understanding that the sheriff may make any gain or profit for his private use out of this stipend. The direction of the legislature is to give that prisoner fifty cents' worth of food every day, and not to feed him perhaps on bread and water at an expense of five cents, thus making forty-five cents for the sheriff. The object of the law is to put food into the stomach of the prisoner, and not money into the pocket of the sheriff.

If John Doe should be lawfully elected to the office of sheriff of a certain county, but should be counted out and his opponent installed, and, upon a contest, at the end of a year he should gain the office and the other man be ousted, how about the salary and the mileage account? Certainly, the *de facto* · sheriff would not get the salary, but the lawfully elected man would; but would the latter, who had not served during the first year, be entitled to ten cents a mile for every prisoner transported to the penitentiary meantime and fifty cents a day for every prisoner fed in the jail, or to the difference between what it actually cost and what was paid therefor by the county? We think not. If it were a part of the compensation fixed by law for the performance of certain services by the sheriff in the same way and manner as the salary is, then the sheriff who had been kept out of office for the year unlawfully would be entitled to the mileage as well as the salary. But is there anyone who would venture to say that he could successfully sue in any court of justice to collect the mileage, or the difference between the actual cost of transportation of persons and the mileage, or the difference between the actual cost of feeding prisoners and the allowance of fifty cents per day?

We have not had any authority, except one, called to our attention supporting any other views than those we have advanced above, and that case is *Apple* v. *County of Crawford,* 105 Pa. St. 300, 51 Am. Rep. 205. This case seems to depend largely upon the definition of the word "emolument," as found in the dictionaries. We cannot see wherein the dictionaries are opposed to the views hereinbefore set forth. We acknowledge that the word "emolument" includes the meaning of "gain," "profit," "compensation," etc. But the intention of the legislature must be considered in determining what is meant, not only by "emoluments," but who shall receive them. In this case we do not consider that the legislature ever intended that the sheriff should make a cent either in traveling on business or feeding prisoners, whether the law allows ten cents a mile or "actual expenses." We think that the legislature probably un-

derstood that the expenses averaged about ten cents a mile, including guards, dieting, transportation, etc., and that in some cases sheriffs saved something honestly, and in other cases they lost. But whether loss or gain, it was for the legislature to say how much they should have to meet expenses. Now all sheriffs are treated alike, and there is not any opportunity for one to gain unjustly and another to lose unjustly in the performance of his duty.

The salary pays the sheriff for taking the person to prison. The "mileage" paid the expense incurred. The *actual expense* was paid by the "mileage," were it more or less. Now the actual expense, and not any more or less, is paid by the people.

For the reasons above stated we do not believe that the Constitution of the state is violated by the legislation complained of, when applied to officers elected prior to its passage, and believing that the court below erred, the judgment is reversed and the court is directed to enter judgment for the defendant upon the statement of facts submitted.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.

Rehearing denied January 29, 1906.